**LAWRENCE A. DUBIN**
Attorney at Law
401 Broadway-Suite 306-New York, N.Y. 10013
917-543-0216
Fax (212)966-0588
E-Mail: dubinlarry@aol.com

Member New York and New Jersey Bar

May 23, 2019

Hon. Jessie M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

          Re:   *Raitis Grigorjevz*
                *Dkt. No. 16 Cr. 692 (JMF)*

Dear Judge Furman:

    I write on behalf of my client Raitis Grigorjevz who is presently scheduled for sentencing before you on June 5, 2019 at 3:30 P.M.

## BACKGROUND

    On February 26, 2019, pursuant to a plea agreement, the defendant pled guilty to a one count superseding information charging him and others with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343 and to defraud a financial institution, in violation of 18 U.S.C. § 1344. His stipulated guidelines range is 27 to 33 months.

## FACTS

    The defendant is a citizen of Latvia. He entered the U.S. on November 16, 2018 as tourist on a Latvian passport. He was recruited in Latvia to travel to the U.S. for the purpose of opening bank accounts and withdrawing money from those accounts. The money was turned over to his handler.

1

Raitis was actually in the U.S. for less than two weeks. He arrived on November 16, 2018 and was arrested at JFK airport on Sunday December 2, 2018. In that short period, he made withdraws exceeding $100,000 from the accounts he had established. He received approximately $10,000 for his involvement, some of which he sent back to Latvia, the balance was found in his possession at the time of his arrest.

## MITIGATING FACTORS

Raitis wanted to go home after two days. He felt guilty and uneasy with what he was doing and wanted to return to Finland because he realized, even from the outset, the conduct was illegal. His handler told him he couldn't go until the business was finished. That if he refused "he'd be taken to the banks by strong armed men." Raitis was scared, felt threatened and so acquiesced.

When his handler told him something had happened in Latvia and that he and the others would have to fly home immediately, he silently thanked God that it was all over.

A clear sign that defendant is truly repentant is that after his arrest at JFK, he waived his Miranda rights, and gave the agents a fairly complete statement of his illegal activities. Moreover he consented to the government's request to search his cellphone and tablet.

The defendant is 27 years old. He has never been in trouble before. In fact no one in his family had ever had a conflict with the law. This incident is a total aberration in another wise spotless life.

In 2013, after a four-year course of study, the defendant graduated from a vocational trade school in Rēzekne, Lativa. His studies focused on construction skills, which he possesses in

carpentry, bricklaying, scaffolding, and working with sheetrock. The defendant's primary language is Latvian, but he is also fluent in Russian, Serbian, and speaks conversational English. He has never married and has no children.

For the two year prior to his arrest he worked as a supervisor for a construction and scaffolding company in Helsinki, Finland. He moved to Finland to take that job. The pay is good by Latvian standards. As a supervisor he had forty (40) men working under him. He was on vacation from the company when he travelled to the U.S for the instant offense. The job in Finland dealt with renovating the Olympic Stadium in Helsinki. He was the only foreign supervisor on the job.

This man makes a good living. He will always be able to find work in the construction industry. In fact he was on the verge of returning to Latvia to start his own construction company with his friend and would be partner Alexsejs when this incident occurred. He stupidly succumbed to the opportunity to make some fast money to help him start his new business. Of course he never discussed any of this with Alexsejs. If he had maybe his participation, this incident never would have happened.

Mr. Grigorjevz is really not a criminal in the true sense of the word. He made a tragic mistake. It haunts him every day of his life. There are days when he wakes up and thinks he is home. Then reality sinks in.

He is deeply ashamed of what he has done. He helped "bad people" steal money from innocent victims and he is sorry about that. Not only because he got caught. He is angry with himself. Blames no one but himself. Feels terrible about the impact this has had on his parents.

His incarceration at the MDC is particularly harsh when compared to other inmates. He has no family or friends in this country. No one to visit him. His parents can't visit him and "its killing me" in his words. He is sorry about the pain he has caused them.

In short he feels and displays all of the emotions one would associate with a decent human being. And in fact he is a decent human being.

As far as the factors, set out in 18 U.S.C. § 3553(a), Mr. Grigorjevz is certainly not a danger to the community. He is going to de deported. He is not in need of rehabilitation. The folly of his actions has certainly been driven home to him. The arrests in this case started in Latvia. Word has certainly reached the public there and here, that this type of conduct will not be tolerated.

I would ask Your Honor to sentence him at a significant variance to his guideline range and consider time served because his continued incarceration serves no useful purpose. When imposing sentence, I would ask Your Honor to factor into your calculation the time he will spend in immigration custody awaiting deportation after his federal sentence is over. I have been informed that he could be in immigration custody anywhere from two to six months.

Respectfully submitted,

/Lawrence A. Dubin
Lawrence A. Dubin, Esq.

LAD/cl